UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KATHLEEN RUSSELL
    Plaintiff,

v.                                                                                         No. 3:17-cv-1237 (VAB)

BRODER & ORLAND, LLC,
CAROLE TOPOL ORLAND
    Defendants.

**RULING ON MOTION FOR SETTLEMENT APPROVAL**

Kathleen Russell ("Plaintiff") filed this lawsuit alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, and state law. Compl., ECF No. 1. The parties now renew a request for settlement approval after this Court expressed concerns with their initial agreement and the parties subsequently agreed to an addendum that modified several terms. *See* Defs. Renewed Mot. for Approval of Settlement ("Def. Mot."), ECF No. 28.; *see also* Ruling on Parties' Joint Motion for Settlement Approval ("November Ruling"), ECF no. 27 (denying approval of initial settlement agreement); Addendum to Settlement Agreement in Support of the Joint Mot. for Approval of Settlement Agreement and Dismissal With Prejudice ("Addendum"), ECF No. 51.

For the reasons stated below, the joint motion is **GRANTED**.

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

Ms. Russell is a Connecticut resident. Compl. ¶ 2. Broder & Orland, LLC, a law firm, is located in Westport, Connecticut, and Carole Topol Orland is a lawyer and founding member of the firm. *Id.* ¶¶ 3-4.

1

### A. Factual Allegations

Ms. Russell alleges she was hired by Broder & Orland, first as a temporary receptionist and then as an assistant to Attorney Topol Orland, Compl. ¶ 7, and was paid as a salaried employee. *Id.* ¶ 9. She allegedly routinely worked forty-eight hours or more per week, regularly working from 8:30 a.m. to 5:50 p.m. and through lunch. *Id.* ¶¶ 12-14.

She maintains that Attorney Topol Orland knew Ms. Russell regularly worked and answered phone calls beyond her allotted hours. *Id.* ¶¶ 14, 16. She also claims to have received e-mails from the firm after her regular work hours, requiring her to respond even if she was at home. *Id.* ¶ 17. She allegedly did not receive compensation for any of this extra work, and received an annual salary, at the time of her termination, of $55,000. *Id.* ¶¶ 9, 22.

Broder & Orland ended Ms. Russell's employment on November 4, 2016. Ms. Russell allegedly was told that "the firm had grown and their needs had changed." *Id.* ¶ 21. She alleges that, because of the way in which the firm's benefit plan was structured, "[t]erminating Russell allowed Broder to increase its senior partners' contributions into the Defined-Benefit plan without having to pay Russell the same benefits." *Id.* ¶ 22.

### B. Procedural History

On July 24, 2017, Ms. Russell filed the Complaint in this lawsuit. Count One alleges that the Defendants violated 29 U.S.C. § 207 "by employing Russell for a workweek longer than forty hours without compensating Russell for her employment in excess of forty hours at a rate not less than one and one-half times the regular rate at which Russell was employed, and further did not pay Russell for all hours worked." Compl. at 4. Counts Two and Three allege violations of 29 U.S.C. § 1140. Compl. at 5. Counts Four and Five allege violations of Connecticut wage and hour laws. *Id.* at 5-6.

Following a settlement conference, the parties settled and the Court closed the case. *See* Minute Entry, ECF No. 16; Order Dismissing Case, ECF No. 17. The parties then filed a joint motion for settlement approval, and Ms. Russell filed a notice of voluntary dismissal of Counts Two and Three. *See* Joint Mot. for Approval of Settlement, ECF No. 19; Pl. Notice of Voluntary Dismissal, ECF No. 20.

The settlement required Defendants to pay $30,000 to Kathleen Russell and an additional $5,000 to her attorney, for a total settlement of $35,000. *See* Settlement Agreement at 1, ECF No. 26. The parties agreed that the agreement should not "be deemed or construed at any time for any purpose as an admission by either party of any liability or unlawful conduct of any kind." *Id.* at 4. The agreement also included an integration clause. *Id.* at 5.

In exchange, "Russell . . . knowingly and voluntarily releases and forever discharges, to the full extent permitted by law, Broder & Orland" from a broad variety of claims. *Id.* at 2. These claims included:

> [A]ny alleged violation of FLSA, REZA, Age Discrimination in Employment Act, the Older Workers Benefits Protection Act, Title VII of the Civil Rights Act of 1964; and. Medical Leave Act; Connecticut Fair Employment Practices Act, any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance; any public policy, contract, tort, or common law; any allegation for costs, fees, or other expenses including attorneys' fees any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance; any public policy, contract, tort, or common law; or any allegation for costs, fees, or other expenses including attorneys' fees; provided, however, that this release shall not impact Russell's existing right to receive vested benefits under the Broder & Orland, LLC Pension Plan.

*Id.* at 2. Under the initial terms of the settlement Ms. Russell also agreed that "she shall not issue, nor participate in, any communication, written, verbal or otherwise, that disparages, criticizes, or otherwise reflects adversely" upon Defendants. *Id.* at 3.

3

The parties sought to submit the settlement agreement for approval to Magistrate Judge Garfinkel either under seal or *in camera* review. *See* Defs. Notice of Supplemental Authority, ECF No. 24. The Court denied the request, noting there was "a strong presumption of public access that can only be overcome with a substantial showing." *See* Order at 3, ECF No. 25 (internal quotations omitted).

The parties then filed the initial settlement agreement on the docket. After reviewing the proposed agreement, the Court denied the motion for approval without prejudice. *See generally* November Ruling. The Court expressed several concerns with the agreement:

> First, the agreement contains a broad release clause. Second, the agreement contains non-disparagement and confidentiality clauses that would include truthful statements about the litigation. Third, the parties have not submitted any documentation for the Court to adjudicate whether or not the settlement agreement fairly resolves a bona fide dispute.

*Id.* at 2. The Court instructed the parties to proceed in one of two ways: by filing an amended agreement and documentation "on the public docket for Court approval addressing the concerns" raised in the November Ruling or notify the court of their intent to abandon the settlement agreement and continue to litigate. *Id.* at 6.

Several weeks later, Defendants filed a "renewed" motion for approval of the agreement. *See* Def. Mot. Defendants provided additional documentation addressing the settlement. They also stated that they "hereby stipulate that the confidentiality and non-disparagement provisions is not, and will not, be construed at any time by Defendants to prohibit Plaintiff from speaking truthfully about the litigation, including Plaintiff's experience litigating this case." *Id.* at 7. Defendants sought to have the Court approve the broad release language as well, arguing that the Complaint alleged non-FLSA claims and that the initial demand letter sent by Plaintiff to the Defendants before the lawsuit stated claims for age discrimination. *Id.* at 8-10.

4

Ms. Russell then changed counsel, and the parties negotiated an addendum. *See generally*, Addendum; Order, ECF No. 39; Notice of Appearance, ECF No. 45. The Addendum made several changes to the original agreement. First, the confidentiality provisions were amended to clarify that "Nothing in this paragraph, or elsewhere in this Agreement or any other agreement or understanding between the Parties, is intended to prevent or prohibit Russell from making truthful statements about her experience litigating the Action." *Id*. ¶ 5. It also narrowed the non-disparagement clause. *Id*. ¶ 6.

## II.     STANDARD OF REVIEW

The Fair Labor Standards Act "is a uniquely protective statute." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015). In light of these protections, courts in the Second Circuit are required to approve settlement agreements where the parties seek dismissal with prejudice of FLSA claims. *Id.* at 206 ("Thus, Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect.").

In *Cheeks*, while the Second Circuit did not adopt a precise test the court did refer to several different, non-exclusive factors previously used in evaluating settlement agreements by district courts. *See Cheeks,* 796 F.3d. at 206 (noting district courts have examined FLSA settlements to determine if the release provision is overly broad, the settlement includes an overly restrictive non-disparagement clause, and whether attorneys' fees are reasonable).

## III.    DISCUSSION

This Court previously denied approval in this case for three reasons: a broad release clause, a lack of documentation, and non-disparagement and confidentiality provisions seemingly including true statements about the lawsuit itself. The parties have submitted

additional documentation, as well as an addendum, in order to address some of the Court's concerns, and they now renew their request for approval.

The Court concludes that its concerns have been adequately addressed and it will approve the Settlement Agreement, as amended by the April 17th Addendum and Defendants' stipulations regarding its terms.

### A. Release Provision

This Court previously declined approval because the Settlement Agreement had a "broad release section" that swept beyond "the release of the type of claim settled in this FLSA action, especially given the inclusion of past and future claims under tort, common law, or federal, state, and local human rights law." November Ruling at 3. Courts within the Second Circuit have rejected such agreements. *See, e.g., Panganiban v. Medex Diagnostic & Treatment Ctr., LLC*, No. 15-cv-2588 (AMD)(LB), 2016 WL 927183, at *3 (E.D.N.Y. Mar. 7, 2016) (approving of broad waiver including human rights claims because plaintiff had pled those claims in the original complaint and "at the very least, the plaintiff is aware of her claims arising under these statutes."); *Thallapaka v. Sheridan Hotel Assocs. LLC,* No. 15-cv-1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) ("This Court will not sanction releases in FLSA cases where the parties purport to waive 'practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issue.'") (quoting *Camacho v. Ess–a–Bagel, Inc.*, 14-cv-2592 (LAK), 2015 WL 129723, at *1 (S.D.N.Y. Jan. 9, 2015)).

In moving for approval a second time, while the parties have not modified the release clause in the agreement, Defendants note that the release of claims outside of the wage-and-hour claims is appropriate because those claims "were either filed by Plaintiff (in the case of ERISA)

6

or threatened against Defendants (in the case of workplace discrimination) . . . ." Defs. Mot. at 8. Defendants also refer to the initial demand letter in this case, which included claims for age discrimination, to support their position. *Id.* Finally, Defendants "hereby stipulate the release shall not be construed to release any claims other than those stemming from, or related to, Plaintiff's employment relationship with Broder & Orland, LLC." Def. Mot. at 10.

The Court will approve the Settlement Agreement, with the stipulation noted by Defendants. Ms. Russell will only be bound by the release as to the following categories of claims: FLSA, ERISA, and age discrimination claims. First, the ERISA and FLSA claims are both in the Complaint in this matter and therefore appropriate for release. *See generally* Compl. Second, as to the workplace discrimination claims, Ms. Russell's inclusion of those claims in the demand letter ensure her awareness of her right to bring claims under the ADEA. *Cf. Panganiban*, 2016 WL 927183, at *3 (holding broad release was appropriate because "at the very least, the plaintiff is aware of her claims arising under these statutes").

Because Defendants stipulate that the agreement "shall not be construed to release any claims other than those stemming from, or related to, Plaintiff's employment relationship with Broder & Orland, LLC," Defs. Mot. at 8, the Court construes this statement to apply to all claims other than any claims arising under the ADEA, FLSA or ERISA. *See Pinzon v. Jony Food Corp.*, No. 18-CV-105 (RA), 2018 WL 2371737, at *2 (S.D.N.Y. May 24, 2018) ("All the released claims are related to wage-and-hour or other employee benefit issues and are sufficiently narrow so as to survive judicial scrutiny . . . .")(citing *Lola v. Skadden, Arps, Meagher, Slate & Flom*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). Additionally, the Court will not enforce the Settlement Agreement as to any other claims. *Cf. Hernandez v. Fresh Diet Inc.*, No. 1:12-CV-4339, 2017 WL 4838328, at *2 (S.D.N.Y. Oct. 25, 2017) ("With respect

to settlement of FLSA claims, judicial approval is necessary for an agreement to be enforceable."); *Lin v. Grand Sichuan 74 ST Inc.,* No. 15-CV-2950 (RA)(KNF), 2016 WL 5497837, at *1 (S.D.N.Y. June 23, 2016) (declining to enforce settlement where "no stipulated settlement agreement resolving the instant action was ever presented to the court or the United States Department of Labor for approval.").

### B. Non-Disparagement and Confidentiality

In its original order, the Court expressed concern about the confidentiality and non-disparagement clauses. November Ruling at 4 (noting that "[c]ourts in this Circuit have routinely rejected agreements that contain similar confidentiality and non-disparagement clauses" and collecting cases). Courts reviewing settlements after *Cheeks* have required settlements to include "a carve-out for truthful statements about plaintiffs' experience litigating their case." *Lopez v. Nights of Cabiria*, LLC, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015); *see also Martinez v. Gulluoglu LLC,* No. 15-CV-2727 (PAE), 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016).

The parties have submitted an addendum modifying both terms. Addendum ¶¶ 5-6. The settlement now includes clarification that the agreement's provisions are not "intended to prevent or prohibit Russell from talking about her experience litigating the Action." *Id.* ¶ 5. This carve-out is necessary, and addresses the Court's concern. *Compare with Lopez,* 96 F. Supp. 3d at 180.

### C. Documentation and Fairness of Settlement

In its earlier ruling, this Court noted that it "lacks any documentation as to Ms. Russell's alleged damages and, therefore, whether $35,000 represents a fair settlement of her claims." November Ruling at 5. Defendants, in renewing their motion, submitted time sheets and other documentation explaining how the settlement amount would be fair and reasonable in light of Ms. Russell's potential recovery. Def. Mot. at 3-7.

### 1. Fairness and Reasonableness

Courts within the Second Circuit have generally considered the following when examining a proposed FLSA settlement:

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Romero et al v. Fluff N Fold Laundry Services LLC et al*., No. 15 CIV. 9535 (HBP), 2018 WL 2768642, at *3 (S.D.N.Y. June 8, 2018) (applying five factors and approving FLSA settlement).

First, Defendants argue that "the agreed-upon $35,000 settlement amount actually provides Plaintiff with an award beyond what she could recover at trial based upon her own allegations, but without the time and costs expended in further litigation." Def. Mot. at 4. Their calculation is based on the fact that Plaintiff had alleged she routinely worked forty-eight hours per week, for fifty weeks. *Id.* at 5 (quoting Compl. ¶ 9-12). But the settlement amount "provides Plaintiff overtime pay for approximately fifty-two (52) hours for each month, more than what is claimed in the Complaint." *Id.*

Second and third, Defendants have submitted documentation suggesting that, were the case to go to trial, the evidence would only support a fraction of Ms. Russell's claims. *See* Def. Mot. at 6 (noting vacation time and log-in times). This documentation suggests that Ms. Russell's claim might face significant litigation risk, if the case continued to trial. Additionally, the parties reached an agreement early in litigation, and abandoning the agreement now would

greatly increase costs. *See Pinguil, et al., Plaintiffs, v. We Are All Frank, Inc., et al.*, No. 17-CV-2237 (BCM), 2018 WL 2538218, at *2 (S.D.N.Y. May 21, 2018) (noting Plaintiffs' recognition that damages did not account "for sick days, days off, holiday, or other day not work" and therefore "acknowledge[d] that their claims could be undermined further at trial"); *Pinzon*, 2018 WL 2371737, at *2 ("Settling for even thirty percent of the total potential recovery is significant enough in this case to weigh in favor of approval—particularly in light of the early procedural posture of the case and the value to Plaintiff of receiving such a large lump sum without the risk and delay inherent in litigation").

Fourth, the settlement was negotiated at arms-length before Magistrate Judge Garfinkel. *See* Def. Mot. at 6. Ms. Russell was represented by two different attorneys, both with significant experience, and both attorneys came to a similar conclusion regarding the settlement. *See Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."); *Quizhpi v. PSSP NY Inc*., No. 17-CV-693 (OTW), 2018 WL 2926150, at *2 (S.D.N.Y. June 11, 2018) (finding settlement reached at conference before magistrate judge was "product of arm's-length bargaining between experienced counsel").

Fifth, there is little likelihood of fraud or collusion, given the involvement of Magistrate Judge Garfinkel and a second attorney for Ms. Russell. *See Romero*, 2018 WL 2768642, at *3 ("As noted above, the material terms of the settlement were reached following a judicially supervised telephonic conference, which was preceded by a judicially supervised settlement conference. This fact further negates the possibility of fraud or collusion.").

As a result, the Court concludes that the proposed agreement is fair and reasonable.

### 2. Attorneys' Fees

The attorney fees provision also appears to be reasonable. Courts in the Second Circuit have generally accepted as reasonable fees that represent no more than one-third of the total award. *See, e.g.*, *Martinez v. Gulluoglu LLC*, 15-cv-2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) ("Barring unusual circumstances not present here, courts in this District have declined to award fees constituting more than one-third of the total settlement amount in an FLSA action."); *Thornhill v. CVS Pharmacy, Inc.*, 13-cv-5507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (noting in FLSA action that courts in the Second Circuit "typically approve attorney's fees that range between 30 and 33" per cent).

Here, Ms. Russell would be entitled to receive $30,000 under the settlement; her counsel would receive $5,000. The total award would therefore equal $35,000. The attorneys' fee provisions would represent approximately fourteen per cent of the total, below the one-third threshold adopted by other courts.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Settlement Approval is therefore **GRANTED.**

SO ORDERED this 22nd day of June at Bridgeport, Connecticut.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE